UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DONALD RAY ROBINSON, <br><br> Plaintiff, <br><br> v. <br><br> TERRI L. GONZALEZ, et al., <br><br> Defendants. | Case No. CV 11-5639-DOC (JEM) <br><br> MEMORANDUM AND ORDER DISMISSING FIRST AMENDED COMPLAINT WITH LEAVE TO AMEND |

On July 18, 2011, Donald Ray Robinson ("Plaintiff"), a state prisoner proceeding pro se and in forma pauperis, filed a civil rights complaint pursuant to 28 U.S.C. § 1983 ("Complaint").

On August 22, 2011, the Court issued an Order Dismissing Complaint With Leave to Amend. On November 15, 2011, Plaintiff filed a First Amended Complaint ("FAC").

**SCREENING STANDARDS**

In accordance with the provisions governing in forma pauperis proceedings, the Court must screen the Complaint before ordering service to determine whether the action: (1) is frivolous or malicious; (2) fails to state a claim on which relief may be granted; or (3) seeks monetary relief against a defendant who is immune from such relief. See 28 U.S.C. § 1915(e)(2). This screening is governed by the following standards:

A complaint may be dismissed as a matter of law for failure to state a claim for two reasons: (1) the plaintiff fails to state a cognizable legal theory; or (2) the plaintiff has alleged insufficient facts under a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir. 1990). In determining whether a complaint states a claim on which relief may be granted, allegations of material fact are taken as true and construed in the light most favorable to the plaintiff. Love v. United States, 915 F.2d 1242, 1245 (9th Cir. 1988). However, "the liberal pleading standard . . . applies only to a plaintiff's factual allegations." Neitzke v. Williams, 490 U.S. 319, 330 n.9 (1989). "'[A] liberal interpretation of a civil rights complaint may not supply essential elements of the claim that were not initially pled.'" Bruns v. Nat'l Credit Union Admin., 122 F.3d 1251, 1257 (9th Cir. 1997) (quoting Ivey v. Bd. of Regents, 673 F.2d 266, 268 (9th Cir. 1982)).

Although a complaint "does not need detailed factual allegations" to survive dismissal, a plaintiff must provide "more than mere labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555 (2007) (rejecting the traditional "no set of facts" standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). The complaint must contain factual allegations sufficient to rise above the "speculative level" (Twombly, 550 U.S. at 555), or the merely possible or conceivable. Id. at 557, 570.

Simply put, the complaint must contain "enough facts to state a claim to relief that is plausible on its face." Id. at 570. A claim has facial plausibility when the complaint presents enough facts "to draw the reasonable inference that the defendant is liable." Ashcroft v. Iqbal, 556 U.S. 662, __, 129 S. Ct. 1937, 1949 (2009). This standard is not a probability requirement, but "it asks for more than a sheer possibility that a defendant has acted unlawfully." Id. A complaint that pleads facts that are merely consistent with liability stops short of the line between possibility and plausibility. Id.

In a pro se civil rights case, the complaint must be construed liberally to afford plaintiff the benefit of any doubt. Karim-Panahi v. Los Angeles Police Dept, 839 F.2d 621, 623 (9th Cir. 1988). Before dismissing a pro se civil rights complaint for failure to state a

claim, the plaintiff should be given a statement of the complaint's deficiencies and an opportunity to cure. Id. Only if it is absolutely clear that the deficiencies cannot be cured by amendment should the complaint be dismissed without leave to amend. Id. at 623; see also Cato v. United States, 70 F.3d 1103, 1106 (9th Cir. 1995).

Although the Court must construe a pro se plaintiff's complaint liberally, Plaintiff nonetheless must allege a minimum factual and legal basis for each claim that is sufficient to give each defendant fair notice of what Plaintiff's claims are and the grounds upon which they rest. Brazil v. United States Department of the Navy, 66 F.3d 193, 199 (9th Cir. 1995).

After careful review and consideration of the FAC under the relevant standards and for the reasons discussed below, the Court finds that the FAC is inadequate to withstand screening and **ORDERS** the FAC **DISMISSED WITH LEAVE TO AMEND.**

## PLAINTIFF'S ALLEGATIONS

Plaintiff alleges the following:

Upon Plaintiff's arrival at the California Men's Colony ("CMC") in San Luis Obispo, California, prison officials improperly classified Plaintiff as a gang member and held him in segregated housing too long and without a proper hearing or any reliable evidence, all in violation of prison regulations and due process. Plaintiff challenges his initial placement in the Administrative Segregation Unit ("ASU"), subsequent decisions by several Institutional Classification Committees ("ICCs") to retain him in the ASU, his ultimate validation as a member of the Black Guerilla Family ("BGF") prison gang and United Blood Nation ("UBN") disruptive group,[1] his resulting assessment of an indeterminate term in the Secured Housing Unit ("SHU") at the California State Prison at Corcoran ("CSP-Corcoran"), as well as administrative appeal decisions addressing his claims regarding the prison's validation procedures. (See FAC at 5-19, Exhs. B-J.)

---

[1] Although Plaintiff does not specifically challenge his UBN validation in the FAC, he did in his initial Complaint and the documents relating to the UBN validation are contained in the exhibits to the FAC. See, e.g., FAC Exh. C. To the extent that Plaintiff challenges his assignment to and retention in the ASU and his ultimate assessment of an indeterminate SHU term, he necessarily challenges his UBN validation.

Prison officials were deliberately indifferent to Plaintiff's serious medical needs, in violation of the Eighth Amendment, and violated prison regulations when they failed to provide him with adequate pain medication, took away his knee and ankle brace, failed to move him to a lower tier, lower bunk as ordered by prison physicians, and otherwise failed to provide him with proper treatment for his knee and ankle pain. (See FAC at 20-26.)

Plaintiff seeks declaratory and injunctive relief and compensatory and punitive damages. (FAC at 44.)

Plaintiff also appears to bring a claim alleging violations of the Eighth Amendment in connection with his detention in the Secured Housing Unit at CSP-Corcoran. (FAC ¶¶ 148-154.) CSP-Corcoran is not located within this judicial district. To the extent that Plaintiff is bringing a claim based on the conditions of his confinement at CSP-Corcoran, it should be brought in a separate lawsuit in the Eastern District of California.

## DISCUSSION

The Court, having reviewed the Complaint pursuant to the standards set forth above, has determined that certain of Plaintiff's claims do not withstand screening for the following reasons:

**I. Plaintiff's Claims for Damages Against Defendants in Their Official Capacities Are Barred By the Eleventh Amendment**

Plaintiff has named each of the Defendants in their official capacities. (FAC ¶ 19.) The Supreme Court has held that an "official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." Kentucky v. Graham, 473 U.S. 159, 166 (1985); see also Brandon v. Holt, 469 U.S. 464, 471-72 (1985); Larez v. City of Los Angeles, 946 F.2d 630, 646 (9th Cir. 1991). Such a suit "is not a suit against the official personally, for the real party in interest is the entity." Graham, 473 U.S. at 159. The California Department of Corrections and Rehabilitation ("CDCR"), the entity that employs each of the Defendants, is an agency of the State of California.

States, state agencies, and state officials sued in their official capacities are not persons subject to civil rights suits under 42 U.S.C. § 1983. Will v. Michigan Department of

4

1 State Police, 491 U.S. 58, 64-66 (1989).  A suit against a state official in his or her official
2 capacity is a suit against the official's office, and as such is no different from a suit against
3 the State itself, which would be barred by the Eleventh Amendment.  See id.; see also
4 Romano v. Bible, 169 F.3d 1182, 1185 (9th Cir. 1999); Stivers v. Pierce, 71 F.3d 732, 749
5 (9th Cir. 1995).  "[T]he [E]leventh [A]mendment bars actions against state officers sued in
6 their official capacities for past alleged misconduct involving a complainant's federally
7 protected rights, where the nature of the relief sought is retroactive, *i.e.*, money damages . .
8 . ."  Bair v. Krug, 853 F.2d 672, 675 (9th Cir. 1988).

9       To overcome the Eleventh Amendment bar on federal jurisdiction over suits by
10 individuals against a State and its instrumentalities, either the State must have consented to
11 waive its sovereign immunity or Congress must have abrogated it; moreover, the State's
12 consent or Congress' intent must be "unequivocally expressed."  See Pennhurst State
13 School & Hosp. v. Halderman, 465 U.S. 89, 99-100 (1984).  While California has consented
14 to be sued in its own courts pursuant to the California Tort Claims Act, such consent does
15 not constitute consent to suit in federal court.  See BV Engineering v. Univ. of Cal., Los
16 Angeles, 858 F.2d 1394, 1396 (9th Cir. 1988).  Moreover, Congress has not abrogated
17 State sovereign immunity against suits under 42 U.S.C. § 1983.

18       Plaintiff's suit for retroactive relief against each of the Defendants in their official
19 capacities is tantamount to a suit against the State of California, and such suits are barred
20 by the Eleventh Amendment.[2]

21 **II.    Plaintiff's Claims for Injunctive and Declaratory Relief Appear to Be Moot**

22       Based on a review of the CDCR's inmate locator, it appears that Plaintiff has been
23 released from CDCR custody.  See http://inmatelocator.cdcr.ca.gov.  If Plaintiff is no longer
24 incarcerated, his claims for injunctive and declaratory relief relating to CDCR's policies are

---

[2] Based on a review of the CDCR's inmate locator, it appears that Plaintiff may have been released from CDCR custody.  See http://inmatelocator.cdcr.ca.gov.  If Plaintiff is no longer incarcerated, his claims for injunctive and declaratory relief relating to the prison's policies are moot. See Preiser v. Newkirk, 422 U.S. 395, 403 (1975) (inmate's request for declaratory relief rendered moot by inmate's transfer to another prison); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (same).

moot. See Preiser v. Newkirk, 422 U.S. 395, 403 (1975) (inmate's request for declaratory relief rendered moot by inmate's transfer to another prison); Weinstein v. Bradford, 423 U.S. 147, 148-49 (1975) (inmate's due process claims moot upon his release from prison); Dilley v. Gunn, 64 F.3d 1365, 1368-69 (9th Cir. 1995) (inmate's request for declaratory relief moot upon transfer to another prison).

**III.    Plaintiff"s Allegations Are Insufficient to State a Claim Based on Defendants' Supervisory Roles**

Plaintiff has named as defendants various CDCR supervisory personnel, including: Matthew Cate, Director of CDCR; Terri L. Gonzalez, Warden of CMC; Ted Fox, Chief Executive Officer of CMC; Ellen Greenman, Chief Medical Executive of CMC; Kim Kumar, Chief Physician and Surgeon at CMC; E. Valenzuela, Chief Deputy Warden of CMC; J. Cutillo, Associate Warden of CMC; M.A. Johnson, Classification and Parole Representative at CMC; R.P. Graves, Correctional Captain at CMC; and J.L. Cortez, Correctional Lieutenant at CMC. (See FAC at 1, 3-4.)

Plaintiff may not maintain a federal civil rights action against an official based on his or her supervisory position. Supervisory personnel generally are not liable under 42 U.S.C. § 1983 on any theory of respondeat superior. See, e.g., Redman v. County of San Diego, 942 F.2d 1435, 1446 (9th Cir.1991) (en banc). A supervisory official may be liable under § 1983 only if he or she was personally involved in the constitutional deprivation; "knowingly refused to terminate a series of acts by others, which he knew or reasonably should have known would cause others to inflict a constitutional injury"; or acquiesced in the constitutional deprivations forming the basis of the complaint. Dubner v. City & County of San Francisco, 266 F.3d 959, 968 (9th Cir. 2001). In addition, a supervisor's liability may be premised on a policy promulgated by the supervisor only if plaintiff can identify a specific policy and establish a "direct causal link" between that policy and the alleged constitutional deprivation. See, e.g., City of Canton v. Harris, 489 U.S. 378, 385 (1989); Oviatt v. Pearce, 954 F.2d 1470, 1474 (9th Cir. 1992).

1    Plaintiff has failed to allege facts sufficient to establish that any of the above-named
2 Defendants were personally involved in the constitutional deprivations, knowingly refused to
3 terminate a series of acts by others which he knew or should have known would cause
4 others to inflict a constitutional injury, or acquiesced in the constitutional deprivations
5 alleged.  Thus, Plaintiff has failed to state a federal civil rights claim against their individual
6 actions, such allegations are insufficient to state a federal civil rights claim.

**IV.   Plaintiff's Allegations Based on An Alleged Failure to Follow Prison Guidelines Are Insufficient to State a Federal Civil Rights Claim**

To state a claim against a particular defendant for violation of his civil rights under 42 U.S.C. § 1983, plaintiff must allege that the defendant deprived him of a right guaranteed under the Constitution or a federal statute.  See West v. Atkins, 487 U.S. 42, 48 (1988); Karim–Panahi, 839 F.2d at 624.  "A person deprives another 'of a constitutional right, within the meaning of § 1983, if he does an affirmative act, participates in another's affirmative acts, or omits to perform an act which he is legally required to do that causes the deprivation of which [the plaintiff complains].'" Leer v. Murphy, 844 F.2d 628, 633 (9th Cir. 1988), quoting Johnson v. Duffy, 588 F.2d 740, 743 (9th Cir. 1978) (emphasis in original).

Here, Plaintiff repeatedly alleges that various defendants acted in violation of prison regulations.  (See, e.g., FAC at ¶¶ 29, 30, 32, 34, 42, 44, 46, 63, 67, 70.)  Plaintiff's allegations that prison officials failed to comply with state law or prison regulations do not give rise to a federal civil rights claim.

**V.   Plaintiff's Allegations Are Insufficient to State a Federal Civil Rights Claim Pursuant to the Due Process Clause**

Plaintiff alleges that certain Defendants violated his federal due process rights by assigning him to the ASU upon his arrival at CMC, retaining him in ASU during the gang validation process, and ultimately assessing a permanent SHU term.  Specifically, Plaintiff alleges that upon his arrival at CMC on January 11, 2010, prison officials commenced an investigation regarding Plaintiff's potential membership in the BGF prison gang and the UBN disruptive group.  He was immediately placed in the ASU pending completion of the validation process.  Plaintiff ultimately was validated as a member of the BGF and the UBN

and assessed an indeterminate SHU term. Consequently, he was transferred to the SHU at CSP-Corcoran. Plaintiff appears to allege that he was not provided with sufficiently timely hearings regarding validation and ASU placement and retention and that prison officials relied on inadequate, inaccurate, and falsified information in the validation process. (See FAC ¶¶ 22-95; Exhs. B-H.) Plaintiff alleges that this resulted in his unconstitutional placement and/or retention in the ASU and/or SHU.

The guarantees of substantive and procedural due process under the Fourteenth Amendment apply only when a constitutionally protected liberty or property interest is at stake. See Ingraham v. Wright, 430 U.S. 651, 672 (1977). In the prison context, the Supreme Court has held that the Due Process Clause does not protect a prisoner's alleged liberty interest where the sanction "is within the normal limits or range of custody which the conviction has authorized the State to impose." See Meachum v. Fano, 427 U.S. 215, 225 (1976). Constitutionally protected liberty interests "will be generally limited to freedom from restraint which, while not exceeding the sentence in such an unexpected manner as to give rise to protection by the Due Process Clause of its own force, nonetheless imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Connor, 515 U.S. 472, 483–84 (1995). Thus, for example, courts have held that a prisoner does not have a constitutionally protected liberty interest in remaining in the general prison population (see Hewitt v. Helms, 459 U.S. 460, 466–70 (1983)); that a prisoner does not have a constitutionally protected liberty interest in good time credits (see Wolff v. McDonnell, 418 U.S. 539, 557 (1974)); that placing a prisoner in disciplinary segregation for 14 days for violating prison regulations did not violate a constitutionally protected liberty interest (see Mujahid v. Meyer, 59 F.3d 931, 932 (9th Cir. 1995)); and that placing a prisoner in disciplinary segregation for 3 years as discipline for fighting was not an atypical and significant hardship in relation to the ordinary incidents of prison life (see Bonner v. Parke, 918 F. Supp. 1264, 1270 (N.D. Ind.1996)).

Once a liberty interest has been established, an inmate must be provided with (1) notice of the charges or reasons such placement is being considered, (2) an opportunity to

be heard, and (3) notice of any adverse decision such as the decision to place him in segregation as a validated gang affiliate. See Wilkinson v. Austin, 545 U.S. 209, 229 (2005) (relying on Greenholtz v. Inmates of Nebraska Penal and Corr. Complex, 442 U.S. 1, 16 (1979), and Hewitt v. Helms, 459 U.S. 460, 473–76 (1983)).

"It is clear . . . that prisons have a legitimate penological interest in stopping prison gang activity." Bruce v. Ylst, 351 F.3d 1283, 1289 (9th Cir. 2003). To that end, California has developed procedures to identify and segregate gang members.[3] See 15 C.C.R. § 3378. Due process in this context requires only an informal, nonadversary proceeding where the inmate receives notice of the charges and an opportunity to present his views to the prison officials making the decision. See Toussaint v. McCarthy, 801 F.2d 1080, 1100 (9th Cir. 1986).

In addition, due process imposes a minimal evidentiary requirement that there be "some evidence" supporting the decision to place the inmate in the ASU for gang affiliation. Bruce, 351 F.3d at 1287 (citing Superintendent v. Hill, 472 U.S. 445, 455 (1985)); see also Ruiz v. Cate, 2011 WL 2213736, at *1 (9th Cir. June 6, 2011) (citing Bruce in holding, to the extent a prisoner had demonstrated a "liberty interest in avoiding continued SHU confinement" based on his designation as an "inactive gang affiliate," the prisoner had received all the process that he was due). Under the "some evidence" standard, the Court does not "examine the entire record, independently assess witness credibility, or reweigh the evidence; rather, 'the relevant question is whether there is any evidence in the record that could support the conclusion.'" Bruce, 351 F.3d at 1287 (citing Hill, 472 U.S. at 455–56).

Based on the foregoing standards, Plaintiff has failed to allege facts demonstrating that his initial placement and retention in the ASU pending the outcome of the validation process was an atypical or significant hardship in relation to the ordinary incidents of prison life. Moreover, even assuming that Plaintiff could establish a liberty interest in being free of

---

[3] As stated previously, Plaintiff cannot state a federal constitutional claim based on the alleged failure to comply with these regulations.

temporary ASU placement during the validation proceedings and indefinite SHU placement at the conclusion of those proceedings, Plaintiff was provided with the minimal procedural due process protections that were required in this context. Plaintiff appeared for multiple hearings before the Institutional Classification Committee. He received notice of the basis of the determination to place and retain him in the ASU pending the validation proceedings, extensive information regarding the evidence against him, an opportunity to contest that evidence, and notice of the results of the validation process and the decision to place him in the SHU for an indefinite term. This was more than sufficient to comply with due process. See, e.g., Lopez v. Horel, 367 Fed. Appx. 810, 811 (9th Cir. Feb. 25, 2010) (finding allegations that a prisoner "participated in interviews with prison officials, was informed of the evidence indicating his status as a gang member, and was given the opportunity to respond" satisfied the requirements of due process), cert. denied, 131 S. Ct. 134 (2010); Barnett v. Centoni, 31 F.3d 813, 815 (9th Cir. 1994) (holding prisoner's due process rights were not violated when he was notified of a reclassification and had an opportunity to present his views); Toussaint, 926 F.2d at 803 (noting due process requires a prisoner have the opportunity to present his views to the official deciding whether to transfer the prisoner to administrative segregation).

  Moreover, there was "some evidence" to support the findings, in that prison officials relied on reports from confidential informants, gang symbols, communications between Plaintiff and known gang and disruptive group members, and information obtained from known gang and disruptive group members. See Bruce, 351 F.3d at 1287-88 (holding no due process violation when prison officials relied upon a police report indicating the inmate had been associated with a gang, the inmate's codefendant was a gang member, and a confidential prison informant identified the inmate as a gang member); Zimmerlee v. Keeney, 831 F.2d 183, 186-87 (9th Cir. 1987) (holding "some evidence" standard may be satisfied with information obtained from a reliable and credible informant).

  Accordingly, Plaintiff's factual allegations are insufficient to state a due process claim regarding his placement and retention in the ASU and SHU.

**VI. Plaintiff Has Failed to State a Claim for Deliberate Indifference to Serious Medical Needs**

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." Id. at 106. The "deliberate indifference" standard involves an objective and a subjective component. First, the alleged deprivation must be, in objective terms, "sufficiently serious." Farmer v. Brennan, 511 U.S. 825, 834 (1994) (citing Wilson v. Seiter, 501 U.S. 294, 298 (1991)). Second, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. Farmer, 511 U.S. at 837. A prison official does not act in a deliberately indifferent manner unless the official "knows of and disregards an excessive risk to inmate health or safety." Id.

In applying this standard, the Ninth Circuit has held that, before it can be said that a prisoner's civil rights have been abridged, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." Broughton v. Cutter Laboratories, 622 F.2d 458, 460 (9th Cir. 1980) (citing Estelle, 429 U.S. at 105-06). "[A] complaint that a physician has been negligent in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment. Medical malpractice does not become a constitutional violation merely because the victim is a prisoner." Estelle, 429 U.S. at 106; see also Anderson v. County of Kern, 45 F.3d 1310, 1316 (9th Cir. 1995). Even gross negligence is insufficient to establish deliberate indifference to serious medical needs. See Wood v. Housewright, 900 F.2d 1332, 1334 (9th Cir. 1990). A prisoner's mere disagreement with diagnosis or treatment does not support a claim of deliberate indifference. Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).

Delay of, or interference with, medical treatment also can amount to deliberate indifference. See Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006); see also Clement v. Gomez, 298 F.3d 898, 905 (9th Cir. 2002); Hallett v. Morgan, 296 F.3d 732, 744 (9th Cir.

11

2002). Where the prisoner is alleging that delay of medical treatment evinces deliberate indifference, however, the prisoner must show that the delay led to further injury. See Hallett, 296 F.3d at 745-46; Shapley v. Nev. Bd. of State Prison Commissioners, 766 F.2d 404, 407 (9th Cir. 1985) (per curiam).

Plaintiff's treatment history, as set forth in the Complaint, indicates continuous and ongoing treatment of his knee and ankle conditions. The facts alleged do not meet the standards set forth above.

**VII.    Plaintiff Fails to State a First Amendment Right of Association Claim**

Plaintiff alleges that his First Amendment right of association was violated by his validation as a gang and disruptive group member and placement in segregated housing. Plaintiff claims that he was confined in segregated housing because of his innocent association with members of his own racial group, which was not in furtherance of illegal activity. (FAC at 33.)

Prison regulations that infringe a prisoner's constitutional right are valid so long as they are "reasonably related to legitimate penological interests." Turner v. Safley, 482 U.S. 78, 89 (1987); see also Pell v. Procunier, 417 U.S. 817, 822–23 (1974) (identifying four central penological objectives: deterrence (by making incarceration undesirable), protection (by quarantining criminal offenders), rehabilitation, and ensuring internal security of the prison facility). The Supreme Court recognized in Turner that imprisonment does not automatically deprive a prisoner of certain important constitutional protections, including those of the First Amendment. Beard v. Banks, 548 U.S. 521, 528 (2006). But at the same time the Constitution sometimes permits greater restriction of such rights in a prison than it would allow elsewhere. Id. Courts owe "substantial deference to the professional judgment of prison administrators." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Turner reconciled these principles by holding that restrictive prison regulations are permissible if they are "reasonably related" to legitimate penological interests, and are not an "exaggerated response" to such objectives. Turner, 482 U.S. at 87.

The Supreme Court has identified four factors to consider when determining the reasonableness of a prison rule: (1) whether there is a "valid, rational connection between the prison regulation and the legitimate governmental interest put forward to justify it"; (2) "whether there are alternative means of exercising the right that remain open to prison inmates"; (3) "the impact accommodation of the asserted constitutional right will have on guards and other inmates and on the allocation of prison resources generally"; and (4) the "absence of ready alternatives", or, in other words, whether the rule at issue is an "exaggerated response to prison concerns." Turner, 482 U.S. at 89–90.

It is well established that the First Amendment right to freedom of association is among the rights least compatible with incarceration, see Overton, 539 U.S. at 131, and such right "may be curtailed whenever the institution's officials, in the exercise of their informed discretion, reasonably conclude that such associations . . . possess the likelihood of disruption to prison order or stability." Jones v. North Carolina Prisoners' Labor Union, 433 U.S. 119, 132 (1977). Based on the documents attached to the FAC, it is clear that Plaintiff's validation was not based on "benign association" but rather on evidence showing that Plaintiff was involved with gang activity. It cannot be disputed that the prison has a legitimate interest in preserving the safety of its inmates and staff, which includes preventing gang violence. Furthermore, it cannot be said that Plaintiff's validation and placement in the SHU was an "exaggerated response" as his right to association was limited only to the extent necessary to protect himself and others. Accordingly, Plaintiff has failed to state a First Amendment right of association claim.

**VIII. Plaintiff Has Failed to State an Eighth Amendment Claim for Failure to Protect**

Plaintiff claims that prison officials were deliberately indifferent to a risk of serious harm to Plaintiff by interviewing him and trying to force him to become an informant to secure release from the SHU, which apparently subjected Plaintiff to a risk of retaliation by other inmates. (FAC at 35.)

A prison official's deliberate indifference to a substantial risk of serious harm to an inmate's safety violates the Eighth Amendment. Farmer v. Brennan, 511 U.S. 825, 828, 834

1  (1994); Redman v. County of San Diego, 942 F.2d 1435, 1443 (9th Cir.1991) (en banc).
2  The defendant must have been aware of facts from which the inference could be drawn that
3  a substantial risk of serious harm existed, and must have actually drawn the inference.
4  Farmer, 511 U.S. at 837.
5  　　Plaintiff has failed to allege any facts that would support a deliberate indifference
6  claim based on prison officials' interviewing Plaintiff during the gang validation process.

7  **IX.　Plaintiff Has Failed to State a Conspiracy Claim**

8  　　Plaintiff alleges that certain Defendants "did conspire and agree to deprive Plaintiff of
9  his constitutional rights as alleged herein, in violation of 42 U.S.C. sections 1983 and 1985."
10 (FAC at 35-36.)

11 　　In the context of conspiracy claims brought pursuant to section 1983, a complaint
12 must "allege [some] facts to support the existence of a conspiracy among the defendants."
13 Buckey v. County of Los Angeles, 968 F.2d 791, 794 (9th Cir. 1992); Karim–Panahi v. Los
14 Angeles Police Department, 839 F.2d 621, 626 (9th Cir. 1988).  Plaintiff must allege that
15 defendants conspired or acted jointly in concert and that some overt act was done in
16 furtherance of the conspiracy.  Sykes v. State of California, 497 F.2d 197, 200 (9th Cir.
17 1974).

18 　　A conspiracy claim brought under section 1983 requires proof of "'an agreement or
19 meeting of the minds to violate constitutional rights,'" Franklin v. Fox, 312 F.3d 423, 441
20 (9th Cir. 2002) (quoting United Steel Workers of Am. v. Phelps Dodge Corp., 865 F.2d
21 1539, 1540–41 (9th Cir. 1989) (citation omitted)), and an actual deprivation of constitutional
22 rights, Hart v. Parks, 450 F.3d 1059, 1071 (9th Cir. 2006) (quoting Woodrum v. Woodward
23 County, Oklahoma, 866 F.2d 1121, 1126 (9th Cir. 1989)).  "'To be liable, each participant in
24 the conspiracy need not know the exact details of the plan, but each participant must at
25 least share the common objective of the conspiracy.'" Franklin, 312 F.3d at 441 (quoting
26 United Steel Workers, 865 F.2d at 1541).

27 　　Section 1985 proscribes conspiracies to interfere with an individual's civil rights.  To
28 state a cause of action under section 1985(3), plaintiff must allege: (1) a conspiracy, (2) to

deprive any person or class of persons of the equal protection of the laws, (3) an act by one of the conspirators in furtherance of the conspiracy, and (4) a personal injury, property damage or deprivation of any right or privilege of a citizen of the United States. Gillespie v. Civiletti, 629 F.2d 637, 641 (9th Cir. 1980); see also Griffin v. Breckenridge, 403 U.S. 88, 102–03 (1971). Section 1985 applies only where there is a racial or other class-based discriminatory animus behind the conspirators' actions. Sever v. Alaska Pulp Corp., 978 F.2d 1529, 1536 (9th Cir. 1992).

In interpreting these standards, the Ninth Circuit has held that a claim under § 1985 must allege specific facts to support the allegation that defendants conspired together. Karim–Panahi, 839 F.2d at 626. A mere allegation of conspiracy without factual specificity is insufficient to state a claim under 42 U.S.C. § 1985. Id.; Sanchez v. City of Santa Ana, 936 F.2d 1027, 1039 (9th Cir. 1991).

Plaintiff does not allege facts to support the allegation that any of the Defendants entered into a conspiracy. His conclusory allegations are insufficient to state a claim for conspiracy under §§ 1983 or 1985 against any of the Defendants.

## X. Plaintiff Has Failed to State an Equal Protection Claim

Plaintiff claims that Defendants violated his right to equal protection of the law by "intentionally discriminating against him on the basis of his racial group." (FAC at 36.) This claim is based on Plaintiff's contention that "African Americans are placed in the SHU at a rate grossly disproportionate to their presence in the [CSP-Corcoran] general population and in other California prisons." (FAC at 19.)

"The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." City of Cleburne v. Cleburne Living Center, 473 U.S. 432, 439 (1985) (quoting Plyler v. Doe, 457 U.S. 202, 216 (1982)). A plaintiff alleging denial of equal protection under 42 U.S.C. § 1983 based on race or other suspect classification must plead intentional unlawful discrimination or allege facts that are at least susceptible of an inference of discriminatory intent. Monteiro

v. Tempe Union High School Dist., 158 F.3d 1022, 1026 (9th Cir. 1998). To state a claim for relief, the plaintiff must allege that the defendant state actor acted at least in part because of plaintiff's membership in a protected class. Serrano v. Francis, 345 F.3d 1071, 1081–82 (9th Cir. 2003). Proof of a discriminatory intent or purpose is required to show an equal protection violation based on race. See, e.g., Thornton v. City of St. Helens, 425 F.3d 1158, 1166–67 (9th Cir. 2005); Serrano, 345 F.3d at 1082.

"Prisoners are protected under the Equal Protection Clause of the Fourteenth Amendment from invidious discrimination based on race." Wolff v. McDonnell, 418 U.S. 539, 556 (1974) (citation omitted). Invidious racial discrimination such as racial segregation, which is unconstitutional outside prisons, also is unconstitutional within prisons. See Johnson v. California, 543 U.S. 499, 505–06 (2005). A claim of racial discrimination under the Equal Protection Clause requires demonstration of discriminatory intent. Washington v. Davis, 426 U.S. 229, 239–40 (1976); Barren v. Harrington, 152 F.3d 1193, 1194–95 (9th Cir. 1998).

Here, the gang validation procedures were facially neutral, thus Plaintiff is required to show that an invidious or discriminatory purpose underlies the policy or conduct challenged. Lee v. City of Los Angeles, 250 F.3d 668, 686–87 (9th Cir. 2001). Plaintiff has failed to allege facts sufficient to show an invidious or discriminatory purpose underlying the gang validation process.

**XI. Violation of State Laws**

Plaintiff has alleged various state law claims. Violations of state tort law, state regulations, rules and policies of the CDCR, or other state law is not sufficient to state a claim for relief under § 1983. To state a claim under § 1983, there must be a deprivation of federal constitutional or statutory rights. See Paul v. Davis, 424 U.S. 693, 700 (1976). Although the court may exercise supplemental jurisdiction over state law claims, Plaintiff must first have a cognizable claim for relief under federal law. See 28 U.S.C. § 1367. Accordingly, Plaintiff's state law claims are not cognizable in this Court absent a viable federal claim.

* * * * * * * * *

If Plaintiff chooses to pursue this action, he is **ORDERED** to file a Second Amended Complaint within **thirty (30) days** of the date of this Order, which remedies the deficiencies discussed above. The Second Amended Complaint should: (1) bear the docket number assigned in this case; (2) be labeled "Second Amended Complaint"; (3); be filled out exactly in accordance with the directions on the form; and (4) be complete in and of itself without reference to the Complaint, FAC, or any other pleading, attachment or document. The Clerk is directed to provide Plaintiff with a blank Central District of California civil rights complaint form, which Plaintiff must fill out completely and resubmit.

**Plaintiff is admonished that, if he fails to file a Second Amended Complaint by the deadline set herein, the Court will recommend that this action be dismissed for failure to prosecute and failure to comply with a Court order.**

DATED: February 7, 2012

*/s/ John E. McDermott*
JOHN E. MCDERMOTT
UNITED STATES MAGISTRATE JUDGE